May it please the Court, good morning. My name is Philip Nathanson. I represent Philip Roszak. This is an appeal from a couple of dispositions made by the District Court. From our point of view, the first disposition was a dismissal of Mr. Roszak's claim under the Delaware whistleblower statute pursuant to 12b-6. Counsel, I think we're primarily interested in the status of the District of Illinois matter. I gather there was a conference set for the 8th, which would have been Tuesday. There was. Can you report to us what happened? Absolutely. My associate attended. I didn't go, but I did read the transcript and receive information about it. We re-urged our motion to stay the District Court's entry of judgment. As I think the Court knows, we submitted this previously. The District Court had granted the motion to confirm that was filed by U.S. Foods. Confirmed the arbitration award. Correct, in an unsigned minute entry, and denied our motion to vacate the arbitration award. Okay. However, U.S. Foods had filed a number of claims in the District Court in the Northern District of Illinois that had not been disposed of by that ruling. Well, I guess, at least my focus is, what is the status of the confirmation of the arbitration award? That has been untouched, I gather. Is that right? The confirmation has been untouched. All right. The motion to stay that we filed was denied again for the second time on Tuesday. Okay. Has a final judgment been entered then in Illinois? No. No. What's holding up the final judgment? Well, what's holding up the final judgment is U.S. Foods filed a number of claims in the District Court in Chicago that were not adjudicated by the arbitration. So they filed a motion for judgment on the pleadings that asked the district judge in Chicago to grant them judgment on not just the confirmation award, but all of the other claims they had originally pleaded. But it seems to me, based on what you tell us, that the confirmation award, or rather the confirmation of the award, is firm. It may not be in a final order, but it sounds as if it's going to be undisturbed. In all candor, the judge said what he did confirming the award stands. All right. He's not going to. . . Okay. He denied the entry of judgment on the award initially because of all of these other pending claims. And now the issue becomes U.S. Foods has advised him that they are going to voluntarily dismiss, apparently, all of the other claims and just ask for a judgment confirming the award. Okay. That is the status. . . What does that do to the case that we are meeting on right this moment? Isn't your case precluded by the award now? No, it is not. Why? Judge O'Scanlan, in our opinion. Well, first of all, Judge Bolton, in the district court in Arizona, dismissed our whistleblower claim under the Delaware statute under 12b-6 as an adjudication on the merits. So that was done before there was any arbitration. Okay, but now that claim has been arbitrated, right? No. The whistleblower claims were not arbitrated in the arbitration? There were whistleblower claims arbitrated. Including the Delaware claim? Our position is the Delaware claim was not arbitrated or adjudicated by the arbitrator because it had been previously dismissed on the merits by the district court in Arizona. Were there findings by the arbitrator regarding the Delaware laws? No. No. In fact, I searched the decision of the arbitrator again this morning, and the word Delaware is mentioned once. What does it say about Delaware? That the parties have invoked a number of statutes under Delaware, Arizona, and Illinois. Right. I mean, my understanding of the order was that the arbitrator found under any of the laws that you relied on, including Delaware, there was no valid whistleblower claim. Well, I have two responses. The first one is you could certainly read the arbitrator's opinion candidly as saying there was no whistleblowing offense, period. As far as he was concerned. Right. Our position is that the Delaware whistleblower claim that we brought first in the state court in Arizona and then it was removed to the district court in Arizona was resolved on the merits before the claim got to arbitration, so there was not a second adjudication. Well, the import of my question is if you went through an arbitration and the arbitrator found that you were not a whistleblower under any theory, what do we do with that now? And then to add insult to injury, the district court in Illinois confirms that award. Well, from the plaintiff's point of view, we're asking you to rule that none of these claims other than the stock claim under the stock purchase plan should have been submitted to arbitration in the first place. Okay, but the Northern District of Illinois has confirmed the award. And then if you don't like what they did, then you go to the Seventh Circuit and complain about it. Well, that is obviously one of the reasons why we asked to stay the district court's award in Chicago. However, if Judge Bolton erred, which we argue she did in our brief in this court, because there was no arbitration clause at all, forget interpretation, the agreement with the confidentiality clauses and nondisclosure didn't even have an arbitration provision in it. Suppose we were to agree with you if we reversed Judge Bolton. You would go forward, I suppose, in Arizona with your Delaware claim, right? Actually, Your Honor, we have asked this court to certify and we have filed a motion to certify questions to the Delaware Supreme Court because the only basis Whatever, I mean you would go forward with your Delaware claim somewhere or another. Yes, sir. But in the meantime, we have an order from Illinois throwing out your Delaware claim that the Northern District has confirmed. Well, the order in Illinois confirms the arbitration award. The arbitration award says that the arbitrator denies our counterclaims or claims that were made separate and apart from U.S. food claims. But our claim under the Delaware statute was made in a district court in Arizona and adjudicated there. You don't see there would be an inconsistency? Well, I don't know what our position is that there was nothing for the arbitrator to adjudicate on the Delaware whistleblower claim because it was already adjudicated. So we're asking this court to say that Judge Bolton was wrong in entering the 12B6 dismissal under the Delaware statute and we're asking this court to say that wasn't an arbitrable claim anyways, nor were any other claims other than the stock claim. I mean, U.S. foods relied on a nonsolicitation and nondisclosure agreement, NSNDA. It has no arbitration clause at all. Well, what about Section 17 of the stock agreement? Section 17 of the stock agreement. 17B. 17B contains an arbitration clause. And the relevance of that arbitration clause to the claims I'm talking about is paragraph 22 of the stock agreement, which is on ER 80, and it incorporates by reference all provisions contained in the, what it calls the restrictive covenant agreement, which is the NSNDA. All provisions includes the provision in that agreement that a judge of a court of competent jurisdiction only would decide the nondisclosure and solicitation and all those restrictive covenant claims. So the stock agreement incorporates the other agreement, all provisions, which include the right to go to court and have a judge determine the violations or any alleged violations of the NSNDA. So we have asked this Court to rule that this is not a case like some of this Court's cases, like the Chiron case at 207F3-1126, where this Court said there's no issue on the interpretation of the arbitration agreements, no issue on arbitrability, and therefore, everything should be decided by the arbitrator. Indeed, I think the Chiron case would require, if it applied, that the arbitrator decide the res judicata or preclusive effect of what's occurred here, not the district court in Chicago. But the difference between that case and what we're talking about is there is and always has been a dispute in this case about the arbitrability of this claim and every other claim except the stock claim. And so we've, in our notice of appeal and in our brief, we've asked this Court to decide, is anything other than the stock claim under the stock agreement arbitrable? In view of the incorporation of the other agreement, all provisions of the other agreement in paragraph 22 would say, and that agreement says, only a judge of a court of competent jurisdiction can decide violations of the NSNDA. So to get back to what you asked me, Judge Silverman, the judge in Chicago, the district court in Chicago, confirming an arbitration award does not resolve whether in the first instance Judge Bolton was correct in sending the matter to arbitration at all. I looked after the Court entered its order on you wanted the parties to address the preclusive effect of this. I looked at the cases. Some of the cases, as I'm sure you know, turn on what the agreement says. There doesn't appear in 17B to be any reference to the preclusive effect of an arbitration award. So the case is saying, well, if the agreement disposes of that, then the agreement controls. And I didn't see any case that dealt with the issue we have raised, which is when the district court in Arizona dismisses one claim with prejudice and rules the other ones are arbitrable, and we appeal from that and move to stay in multiple courts with Judge Bolton, with the district court in Chicago on the issue of arbitration and arbitrability, can there be a preclusive effect of a ruling confirming an arbitration award that we submit never should have been made in the first place? Forget the content of the arbitration award. Whether I agree with the arbitrator or disagree, I'm sure the Court realizes Philip Rozak disagrees with the arbitrator's reasoning, but that's not what we're talking about on the merits. Would it be, in that case, the Seventh Circuit? I think the appeal to the Seventh Circuit is, as it's currently teed up, would only be on whether our motion to vacate the arbitration award should have been granted and the motion to confirm denied. I don't think the issue — I don't think the Seventh Circuit has the issue. Respectfully, I think this Court has the issue whether these claims were arbitrable in the first instance. I think all the Seventh Circuit can decide at this point is should what the arbitrator eventually did at the arbitration be confirmed or vacated. We're asking this Court not to vacate or confirm an arbitration award. We're asking this Court to reverse Judge Bolton that these claims were arbitrable other than the stock claim. Counsel, you're down to less than two minutes. You may want to return. I'd love to. Thank you. I'd love to reserve. Thank you, Judge. We'll hear from the company. Thank you. May it please the Court, Daniel Davis, for appellees, defendants, who I will call U.S. Foods. Let me go directly to the judge's questions regarding the Northern District of Illinois's case, which requires a little bit of background. We filed our demand for arbitration shortly after we received Mr. Rozak's complaint from the Arizona State Court. We filed a demand for arbitration. We also filed suit in the Northern District of Illinois. Those actions were consistent because the agreements that are before the Court, the master stockholder agreement and the non-solicitation, non-disclosure agreement, have a carve-out for U.S. Foods to seek injunctive relief from a court for violations of the confidentiality obligations of those agreements. Do I understand correctly that the stock agreement provides for arbitration, but the other agreement does not? The other agreement does not explicitly provide for arbitration. The other agreement, if you look at Section 16 of the non-solicitation, non-disclosure agreement, it states, and it's a provision regarding other agreements because U.S. Foods knew that there would probably be other agreements along with the NSNDA. It says, all such provisions shall be interpreted to provide the company with cumulative rights and remedies, and the benefits and protections provided to the company under each such agreement shall be given full force and effect. And so what the agreements contemplated, when you look at them together, and it's important that you look at them together, Mr. Rozak keeps on focusing on Section 10 of the NSNDA, and that is just one very small piece of the larger way that the contracts work together. As Judge O'Scanlan noted, the arbitration clause in the Master Stockholders Agreement refers to the agreement and all agreements that are incorporated therein. Section 22A of the Master Stockholder Agreement explicitly incorporates the non-solicitation, non-disclosure agreement that has provisions that Mr. Rozak is referring to. And so the NSNDA and the MSA are all one agreement, so all those provisions come in together. The MSA also, in Section 17B and 22C, give injunctive relief to U.S. Foods, the right to seek injunctive relief in court. It doesn't give them any other type of relief. We can't seek damages in court under that. We can seek injunctive relief, which we did in the Northern District of Illinois. We tried to get preliminary injunctive relief to get our documents back. And so when you look at Section 10 of the NSNDA, what it's clear what that provision is talking about, it's a waiver of the jury trial. The second clause is very clear about that. And the first clause, I think, is clear as well because it talks about no action, no lawsuit, no demand, no claim or no counterclaims, that those shall be decided by a judge alone. Now, as this Court well knows, a demand for arbitration is not decided by a judge in the narrow sense of the term. But a demand for arbitration is decided by someone who is not a member of a jury. And so when you look at all of those provisions together between the MSA and the NSNDA, it is clear that the overarching MSA provision wanted arbitration. It wanted arbitration for any dispute arising under or related to the agreement and its provisions. And there are cases that we cited in our brief, such as the AT&T tech case from the Supreme Court in 1986, saying that that type of language is about the broadest type of language that you can have for the scope of an arbitration agreement. And we also cited decisions from this circuit talking about, for example, the Comedy Club v. Improv Associates case from this Court in 2009, saying that you need to have a positive assurance that a contract is not susceptible to an interpretation that covers the dispute. And that's Mr. Rozek is putting a lot of weight on Section 10 to try and get out of that. It's just not enough. Roberts. I'd like to ask you, if I may, Mr. Davis, about the whistleblower claim. Yes. If I understand correctly, Judge Bolton threw that out on a motion to dismiss. That's correct. Suppose she was wrong about that. Suppose she misunderstood Delaware law or should have asked to have the question certified. Where do we go from there? In that world, Your Honor, I think two things you should consider. First of all is that the arbitration agreement has collateral estoppel effect. There are numerous cases from this circuit recognizing the res judicata and collateral estoppel effect. You're saying that the Delaware claim was, in fact, arbitrated? Your Honor, my understanding is that Mr. Rozek brought that claim under Delaware, and he also brought claims under Arizona and Illinois whistleblower law and Illinois common law. In the arbitration? In the arbitration. But even if I'm wrong about that, as you noted, the arbitrator made very specific findings that the activities that Mr. Rozek and the other defendant, Mr. Noble, were engaged in come nowhere close to approaching whistleblower activity. And so even if he did not bring a Delaware whistleblower claim, which I don't think is correct, he would still be precluded by the arbitrator's award because he had the right to bring the Delaware claim. All the other claims involved the same type of facts, same types of evidence, same witnesses. There's no way that the arbitration would have been conducted differently, whether there was a Delaware Whistleblower Protection Act claim in there or if there wasn't. And so that decision has preclusive effect. Okay, but I'm not quite sure you answered Judge Silva's question. How does one challenge that? In your view, how should the other side challenge the decision with respect to the whistleblower claim? Your answer is it was covered by arbitration. My answer is it was covered by arbitration. And then what's the next step of appeal? They can also challenge it wherever there was a motion to confirm the arbitration award. Now, it's important that this Court understand that Mr. Rozak made a decision not to bring that action in the Ninth Circuit. U.S. Foods brought a motion, a petition to confirm the arbitration award in the Northern District of Illinois. Mr. Noble, who was the other defendant in this case, brought a motion to vacate the arbitration award in the Southern District of New York. Mr. Rozak, when this litigation was originally filed, filed a motion to transfer. He filed it in the Northern District of Illinois, and he filed a motion to transfer the Northern District of Illinois proceeding to the District of Arizona. The District Court in the Northern District of Illinois denied that motion without prejudice on July 24, 2014. That's ECF No. 57 in the Northern District of Illinois docket. Mr. Rozak then proceeded to file a motion to transfer the Northern District of Illinois case to the Southern District of New York. He forewent. He made a strategic choice not to seek to bring that question back within the Ninth Circuit. He strategically chose to try to bring it towards the Southern District of New York. And that is docket entry No. 61 in the Northern District of Illinois proceedings. And so even by Rozak's own actions, he's decided that he wants the Northern District of Illinois to or he hasn't punted that issue back to the District of Arizona. He's tried to do it between the Northern District of Illinois and the Southern District of New York. In your view, if he wants to pursue this challenge on the whistleblower claim, he has to go to the Seventh Circuit at this stage or what? Well, it can be part of his motion to vacate the arbitration award. He had opportunity to brief that issue. Which was denied, and I guess that case is still pending because of some collateral issues. Is that right? Right. And let me clarify that a little bit because, as I noted above, we brought our complaint in the Northern District of Illinois was solely for injunctive relief. We brought all the same claims in the arbitration, but we also sought monetary damages in the arbitration. And so once the arbitration was resolved in our favor and once the Northern District of Illinois confirmed our award, the original complaint that we filed in the Northern District of Illinois became redundant and moot. And so the parties are, per the order of the Northern District of Illinois, the parties are conferring regarding dismissal of the complaint and final judgment of the award. But I want to – Which then makes it right for an appeal to the Seventh Circuit, should they decide to do that. That's correct. And so the other issue that I want to bring up that I think – One other question. In your view, would the issue of arbitrability be preserved in that appeal to the Seventh Circuit? You heard counsel's argument. Yes, I understand. I'm not sure that he raised it in the Northern District of Illinois proceeding. If he raised it in the context of fighting against our efforts to confirm the arbitration award, then I think the issue is preserved. If he didn't, then I think he's waived that issue. The other issue, the other part of this analysis that I think this Court should consider is the notion of comedy. And this Court has talked about it in a number of circumstances, but the case I'd like to direct the Court to is Church of Scientology v. Department of the Army. And that's 611 F. 2nd, 738. Is that in one of the briefs? That is not. That is a case of – Can you provide a 28-J letter? We can provide a 28-J letter, Your Honor. Well, before you leave the courtroom, you have to provide opposing counsel and three copies for the court of the citation. I have copies of all that. I can provide that to the court. Very well. We looked at that issue when the Court issued the request to determine the preclusive effect of the courts of the Northern District of Illinois's actions. That case talks about the doctrine of comedy, which is pretty straightforward, that federal courts try not to step on each other's toes. They try to avoid parallel proceedings. They try to avoid judgments that contradict each other. The Church of Scientology courts talks about an embarrassment of conflicting judgments. And we think that that issue is squarely presented here. In the Church of Scientology, it was a case where there were various FOIA demands made to various courts over time, and some courts were able to resolve some of those issues sooner than others. The Ninth Circuit found that even though a proceeding in the District of Columbia was filed slightly after the case that the court was considering, that principles of comedy, because that case had progressed further and had reached judgment and had reached conclusions about what some of these FOIA determinations, that the court would invoke the doctrine of comedy and not get involved in those specific questions that had been presented to the other court. And so here, the Northern District of Illinois has had the opportunity to assess the arguments with respect to confirmation of the arbitration of Ward. They've considered that. They've ruled upon it. The Southern District of New York deferred to the Northern District of Illinois, saying, we want you to determine who should decide this issue. And the Northern District of Illinois, after it issued its decision, the Southern District of New York has asked for additional briefing on what we should do next. But that's consistent with the notion of comedy, is that the courts were in three different forums right now. The courts should be careful not to create inconsistent judgments. Well, Ken, are you telling us then that this issue now is precluded? I guess I don't understand by which issue. We think that an appropriate resolution of this matter would be for this court to determine that due to principles of comedy, it should defer to the Northern District of Illinois. If it doesn't decide to do that for the reasons outlined and were briefed. What do you mean by defer? Do you mean not do anything? Not do anything. Dismiss. I say that the Northern District of Illinois is the court that's resolving these issues and has determined we will defer to their judgments, and they will obviously have the right to go to the Seventh Circuit. Therefore, preclusion applies. Is that your argument? Our argument is preclusion applies. Our other argument is we don't think the court ever needs to reach that issue because we think that the court can affirm the district court on the grounds that were provided by the district court. This court can affirm on the grounds of the district court. Which district court are you talking about? The district court of Arizona. Thank you. Judge Bolton's decision. They can affirm based on the reason provided by Judge Bolton. You can affirm based on the grounds that the arbitration agreement and the arbitration clause is broad and includes all of the claims brought by the parties. Mr. Rosak's three claims. Let's see if I understand you. What you're saying is that principles of comity should delay and suspend our judgment over what is an issue in the Northern District of Illinois. But you're not saying that issue preclusion applies because that judgment is not final, is it? How can the issue be? Right. So I think issue preclusion still applies even though there's not a final judgment. It will certainly apply when final judgment is entered. Well, yes. But what about today? If the judgment isn't final, how can issue preclusion apply? Because it's been confirmed. And as this Court has recognized in other cases, you don't even need a confirmation proceeding to determine that an arbitration has preclusive effect. But that determination that arbitration should be followed is not final. And the Seventh Circuit could reverse that, couldn't it? The Seventh Circuit could reverse that. Then what would we be? We would have a decision saying we're precluded from finding anything other than what the trial judge in Chicago found, which has now been reversed. Well, then proceedings would continue in the Northern District of Illinois consistent with what the Seventh Circuit says. And so, once again, you're avoiding the parallel litigation with the risk of inconsistent and conflicting judgments. Well, I can understand you're making a plea that we suspend our judgment until the Illinois court decision is final, right? I can understand that. Is that what you're asking? I'm saying that that's one option that the Court has. I'm also saying that the Court has. But it's not your preferred option, is it? You'd like an affirmance. I would like the — we think the district court's analysis can be affirmed for all the reasons that we've given in our brief. The district court, Judge Bolton. Judge Bolton. We also think that the Court could also determine that the Delaware claim is also arbitrable based on the provisions of the agreements as I've described them. And we have also, as we explained in the brief, that this Court can also determine that the agreement clearly and unmistakably gives the arbitrator the right to determine the question of arbitrability. And that's the case that we cite, Oracle America v. Myriad Group, 724 F. 3rd 1069. That case says that if the arbitration agreement incorporates the American Arbitration Association rules, that is clear and unmistakable evidence that the parties intended to have the arbitrator arbitrate the question of arbitrability, the arbitrator has arbitrated that question and determined that all of the claims brought in the arbitration are arbitrable. And so we think on any of those theories, this Court can affirm the district court. Thank you, counsel. Your time has expired. Thank you. We will hear from Mr. Nathanson. You have some reserve time. I think in view of the questions, it's important to emphasize that the procedural morass that these parties find themselves in was created entirely by U.S. Foods. I filed on behalf of Philip Brozak a state court suit in Arizona. U.S. Foods removed it, I'm sorry, to the U.S. District Court in Arizona. It then filed a demand for arbitration in addition to the removal to the district court in Arizona and filed an injunctive relief case in the U.S. District Court for the Northern District of Illinois. It did not file its injunctive relief claims before Judge Bolton in the U.S. District Court of Arizona. So it wanted to litigate in front of Judge Bolton, in front of the federal district judge in Chicago, and in AAA, the Arbitration Association, in New York. So they created this three-forum morass. Where did the arbitration occur? New York, at the American Arbitration Association, which is what 17B of the stock agreement says. All right. What is the Illinois connection in this case? The Illinois connection is that U.S. Foods, instead of going to Judge Bolton with their injunctive relief claims, when they removed the case. That's where their headquarters is, isn't it? In Rosemont, Illinois. Yes. So they went to Illinois court because they say he stole their secrets or whatever in Illinois. That's why they went to Illinois, isn't it? Well, I understand that's why they did it, Judge Silverman. But they removed this case to the district court in Arizona. Well, that's because you started a case in Arizona. So they have to file the injunctive relief claims there. Well, I don't see that I can fault them for doing anything that the rules permit them to do. But let me ask you a question. This is what's nagging at me. Maybe Judge Bolton was right, maybe she was wrong about the Delaware whistleblower case, whistleblower claim. Right or wrong, your guy litigated whether he was a whistleblower under any conceivable law, and he was found not to be a whistleblower as a matter of fact under any law. Even if Judge Bolton was wrong, I don't understand why her error wouldn't be harmless given that your guy was found not to have been a whistleblower. Because the Delaware statute that Judge Bolton construed, which was not construed by the arbitrator and not litigated in front of the arbitrator, made it unlawful for, in Delaware, to violate a financial management or accounting standard of the company. And we alleged that Mr. Lederer, the CEO, by giving no-bid contracts to a U.S. foods vendor that was owned by his, someone he was in a relationship with. Yeah, but you're missing my point. My point is the arbitrator said he wasn't really blowing the whistle on that. What he was doing was trying to extort money out of the head of the company, basically. Well. Now, maybe the arbitrator got it wrong, but that was what they found. He made no attempt to deal with the financial standards and accounting and management standards criteria under 1702 in the Delaware whistleblower statute. That claim had already been dismissed by Judge Bolton. It wasn't litigated respectfully in front of the arbitrator. And we're asking this Court to reverse her dismissal because I don't see how the Seventh by the district court in Arizona. And I thank the Court and rely on our brief for the rest of our arguments. Thank you, Counsel. The case just argued will be submitted for decision. And we will hear argument next in Habeas Corpus Resource Center versus the Department of Justice.
judges: O'scannlain, Silverman, Bea